JUSTICE WHEAT,
dissenting.
¶26 I concur with the Court’s determination that Miller and Montgomery apply to Montana’s discretionary sentencing scheme and that a lengthy term-of-years sentence could invoke Miller if the sentence is the practical equivalent of life without parole. However, I respectfully dissent from the majority’s decision that Steilman’s sentence does not qualify as a life sentence without parole sufficient to implicate Miller. In my opinion, Steilman’s sentence invokes Miller; therefore, I would grant Steilman’s petition for a writ of habeas corpus and vacate the parole restriction.
¶27 The underlying principles of the United States Supreme Court’s decisions in Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455 (2012), and Montgomery v. Louisiana, _ U.S. _, 136 S. Ct. 718 (2016), are that “children are constitutionally different from adults for purposes of sentencing” and “have diminished culpability and greater prospects for reform.” Miller, 567 U.S. at 471, 132 S. Ct. at 2464. The “imposition of a State’s most severe penalties on juvenile offenders cannot proceed as though they were not children.” Miller, 567 U.S. at 474, 132 S. Ct. at 2466. Montgomery echoed the same concerns: “In light of what this Court has said in Roper, Graham, and Miller about how children are constitutionally different from adults in their level of culpability, ... prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored.” Montgomery, _ U.S. at _, 136 S. Ct. at 736-37. Although the majority reiterates many of these principles, it nevertheless rejects their application where a seventeen-year-old was sentenced to the practical equivalent of life without parole. Consequently, Steilman was never and will never be given an opportunity to show that his crime did not reflect irreparable corruption. Such result is contrary to the principles set forth in Miller and Montgomery.
¶28 The majority erred in concluding that a seventeen-year-old sentenced to 110 years without the possibility of parole, with a *523 conditional minimum sentence of 55 years, is outside the scope of Miller. Miller’s command that a sentencing judge “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,” applies with equal strength to a sentence that is the practical equivalent of life without parole. Miller, 567 U.S. at 480, 132 S. Ct. at 2469. Therefore, states have held that lengthy term-of-years sentences imposed on juveniles, similar to Steilman’s sentence in this case, are sufficient to trigger the protections of Miller under the United States and state Constitutions. See Casiano v. Comm’r of Corr., 317 Conn. 52, 115 A.3d 1031, 1044 (Conn. 2015), cert. denied, Semple v. Casiano, _ U.S. _, 136 S. Ct. 1364 (2016) (50-year sentence without possibility of parole is subject to Miller); Iowa v. Null, 836 N.W.2d 41, 71 (Iowa 2013) (minimum sentence of 52.5 years imprisonment invokes Miller); New Jersey v. Zuber, 227 N.J. 422, 452, 152 A.3d 197, 215 (N.J. 2017) (110-year sentence with 55 years of parole ineligibility implicates Miller); Bear Cloud v. Wyoming, 2014 WY 113, 334 P.3d 132, 141-42 (Wyo. 2014) (holding that an aggregate sentence of more than 45 years was de facto life without parole and was barred by Miller).
¶29 Here, Steilman’s sentence should trigger Miller and Montgomery protections. The District Court sentenced Steilman to the maximum number of years pursuant to § 45-5-201, MCA (1995), and § 46-18-221, MCA (1995), which is the practical equivalent of life without parole. Thus, Steilman’s multiple term-of-years sentence, in all likelihood, will keep him in jail for the majority of his life without the possibility of release until he is well into his seventies.
¶30 Additionally, the majority incorrectly focuses on the fact that Steilman’s sentence is subject to day-to-day credits to conclude that his sentence does not implicate Miller. Opinion, ¶ 22. However, a conditional release based on day-to-day credits is not determined by a district court, but rather is determined by the Montana Department of Corrections. This Court should consider the actual sentence imposed on Steilman, not a sentence that is subjectively determined by an entity other than the District Court. And despite the majority’s conclusion, there is no guarantee that Steilman will be released after 55 years. Therefore, although Steilman’s sentence may be subject to day-to-day credit, it should not negate the fact that the sentencing judge sentenced Steilman to the practical equivalent of life without parole: 110 years without the possibility of parole. Thus, I would conclude that Steilman’s sentence would constitute a de facto life sentence and habeas corpus relief is appropriate.
*524 ¶31 Because Steilman’s sentence is subject to Miller and Montgomery, I would strike the parole restriction. The United States Supreme Court emphasized that by giving Miller retroactive effect “[a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. Such remedy is appropriate here. It would allow Steilman to be considered for parole, which “ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. Further, allowing Steilman parole eligibility would permit the parole board to evaluate whether Steilman “demonstrated the truth of Miller’s central intuition—that children who commit even heinous crimes are capable of change.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. Thus, striking the parole restriction would provide Steilman with the meaningful opportunity for release that Miller and Montgomery mandate of juvenile homicide offenders, provided he does not reflect irreparable corruption.
¶32 Accordingly, I would amend Steilman’s sentence by striking the parole restriction because his sentence of 110 years without the possibility of parole implicates Miller. Then, the parole board could properly consider Steilman’s “youth and attendant characteristics” at the time of his crime and his development and behavior during incarceration. Conversely, Steilman could be re-sentenced or given a Miller hearing to ensure that his sentence does not upset the concerns enunciated by the United States Supreme Court regarding the culpability of juvenile offenders and these offenders’ potential for growth and maturity.
¶33 For these reasons, I dissent from the Court’s denial of Steilman’s petition.
JUSTICE SANDEFER joins in the Dissent of JUSTICE WHEAT.